**No. 24-11733**

**IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT**

————————————

Walmart, Inc.,

Plaintiff-Appellee,

v.

Jean King, in her official capacity as Chief Administrative Law Judge of the Office of
the Chief Administrative Hearing Officer, et al.,

Defendants-Appellants.

————————————

On Appeal from the United States District Court
for the Southern District of Georgia

————————————

**BRIEF FOR APPELLANTS**

————————————

BRIAN M. BOYNTON
  *Principal Deputy Assistant Attorney
  General*

JILL E. STEINBERG
  *United States Attorney*

JOSHUA M. SALZMAN
DANIEL AGUILAR
  *Attorneys, Appellate Staff
  Civil Division, Room 7258
  U.S. Department of Justice
  950 Pennsylvania Avenue NW
  Washington, DC 20530
  (202) 532-4747*

*Walmart, Inc. v. King, No. 24-11733*

## CERTIFICATE OF INTERESTED PERSONS AND
## CORPORATE DISCLOSURE STATEMENT

Pursuant to this Court's local rule 26.1-1, I certify that, to the best of my knowledge,

the following persons and entities may have an interest in the outcome of this case:

Bijan M. Aboutorabi*

Daniel Aguilar

Raul Aguilar

Brian M. Boynton

Kuntal Cholera

Joseph E. Finley

T. Elliot Gaiser

Merrick Garland

Christopher Hall

The Honorable J. Randal Hall, Chief Judge of the U.S. District Court for the

Southern District of Georgia

Tae Johnson

Jones Day

Jean King

O. Woelke Leithart

James McHenry

Hashim M. Mooppan

* Additions to previous certificate marked with an asterisk.

Joshua M. Salzman

Jill E. Steinberg

U.S. Immigrations and Customs Enforcement

United States Department of Justice

United States of America

Walmart, Inc. (WMT)

*/s/ Joshua M. Salzman*
Joshua M. Salzman
Counsel for Appellant

## STATEMENT REGARDING ORAL ARGUMENT

The district court declared an Act of Congress to be unconstitutional, declined to sever the unconstitutional portion of the statute, and permanently enjoined the Department of Justice from adjudicating whether plaintiff has violated the immigration laws.  Oral argument is warranted.

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................................1

STATEMENT OF JURISDICTION .....................................................................3

STATEMENT OF THE ISSUE............................................................................4

STATEMENT OF THE CASE..............................................................................4

    A.    Statutory Background....................................................................4

    B.    Factual Background and Prior Proceedings...................................7

    C.    Standard of Review.......................................................................8

SUMMARY OF ARGUMENT..............................................................................9

ARGUMENT ...................................................................................................... 10

I.    The ALJ's Removal Protections Are Constitutional............................. 10

    A.    Congress may provide inferior officers like ALJs with a measure of protection against removal .....................................................11

    B.    The ALJ here is subject to constitutionally sufficient oversight and control by politically accountable officials....................................14

    C.    The district court misunderstood and misapplied *Free Enterprise Fund* ...........................................................................................17

II.    Walmart Was Not Entitled To Relief Because It Failed To Show That The ALJ's Removal Protections Cause Walmart Any Harm.............................. 22

III.    If Section 7521 Is Unconstitutional, The Correct Response Is To Sever The Unconstitutional Portion Of The Statute....................................................... 25

CONCLUSION .................................................................................................. 29

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

ADDENDUM

# TABLE OF AUTHORITIES

**Cases:** Page(s)

*Ayanian v. Garland,*
    64 F.4th 1074 (9th Cir. 2023) ............................................ 4

*Ayotte v. Planned Parenthood of N. New England,*
    546 U.S. 320 (2006) ............................................ 26, 27

*Barr v. American Ass'n of Political Consultants, Inc.,*
    591 U.S. 610 (2020) ............................................ 8, 26

*Calcutt v. FDIC,*
    37 F.4th 293 (6th Cir. 2022) *rev'd on other grounds,*
    598 U.S. 623 (2023) ............................................ 1-2, 2, 16, 23

*CFPB v. Law Offices of Crystal Moroney, P.C.,*
    63 F.4th 174 (2d Cir. 2023) ............................................ 24

*\*Collins v. Yellen,*
    594 U.S. 220 (2021) ............................................ 3, 9, 22, 23, 26

*Community Fin. Servs. Ass'n of Am. v. CFPB,*
    51 F.4th 616 (5th Cir. 2022), *denying cert. to review this holding,*
    143 S. Ct. 981 (2023), *rev'd on other grounds,*
    601 U.S. 416 (2024) ............................................ 24, 25

*\*Decker Coal Co. v. Pehringer,*
    8 F.4th 1123 (9th Cir. 2021) ............................................ 2, 16, 20, 23

*Edmond v. United States,*
    520 U.S. 651 (1997) ............................................ 11, 17

*Free Enter. Fund v. Public Co. Accounting Oversight Bd.*
    561 U.S. 477 (2010) ............................................ 8, 13, 17, 20, 21, 27

*HHS v. Jarboe,*
    2023 M.S.P.B. 22 (2023) ............................................ 19

*Jarkesy v. SEC,*
    34 F.4th 446 (5th Cir. 2022), *aff'd on other grounds,*
    144 S. Ct. 2117 (2024) ............................................ 16, 24

*K&R Contractors, LLC v. Keene,*
    86 F.4th 135 (4th Cir. 2023) ............................................ 1, 23

iv

*Kalaris v. Donovan*,
    697 F.2d 376 (D.C. Cir. 1983) ................................................................ 27, 28

*Kaufmann v. Kijakazi*,
    32 F.4th 843 (9th Cir. 2022) ................................................................ 24

*\*Leachco, Inc. v. Consumer Prod. Safety Comm'n*,
    103 F.4th 748 (10th Cir. 2024) ............................... 2, 16, 23, 24, 25

*\*Morrison v. Olson*,
    487 U.S. 654 (1988) ............................................... 6, 12, 13-14, 19

*Myers v. United States*,
    272 U.S. 52 (1926) ............................................................ 11, 12

*Nash v. Califano*,
    613 F.2d 10 (2d Cir. 1980) ................................................................ 14

*Ramspeck v. Federal Trial Exam'rs Conference*,
    345 U.S. 128, (1953) ................................................................ 14

*\*Seila Law LLC v. CFPB*,
    591 U.S. 197 (2020) ................................................... 13, 26, 27, 28

*SSA v. Levinson*,
    2023 M.S.P.B. 20 (2023) ................................................................ 19

*United States v. Arthrex, Inc.*,
    594 U.S. 1 (2021) ............................................... 13, 17, 26, 27

*United States v. Perkins*,
    116 U.S. 483 (1886) ................................................................ 11, 19

*United States v. Tinoco*,
    304 F.3d 1088 (11th Cir. 2002) ................................................................ 8

## U.S. Constitution:

Art. II, § 2, cl. 2 ................................................................ 11

## Statutes:

Act of Feb. 24, 1855, ch. 122, 10 Stat. 612 ................................................ 15

Act of June 17, 1930, ch. 497, §§ 518, 646, 46 Stat. 590, 737-39, 762 ............................ 15

Administrative Procedure Act:

5 U.S.C. § 554(d)(2) ................................................................. 5

5 U.S.C. § 556(c) ............................................................... 5-6, 6

5 U.S.C. § 557(b) ................................................................. 15

Immigration and Nationality Act:

8 U.S.C. § 1160(a)(1)-(2) ........................................................ 4

8 U.S.C. § 1184(c)(2)(E) ......................................................... 4

8 U.S.C. § 1254a(a)(1)-(2) ....................................................... 4

8 U.S.C. § 1324a .............................................................. 1, 15

8 U.S.C. § 1324a(a)(1)-(2) ..................................................... 4-5

8 U.S.C. § 1324a(b)(2) ........................................................... 5

8 U.S.C. § 1324a(b)(3) ........................................................... 5

8 U.S.C. § 1324a(e)(1)-(3) ....................................................... 5

8 U.S.C. § 1324a(e)(3) ........................................................... 1

8 U.S.C. § 1324a(e)(3)(B) ........................................................ 5

8 U.S.C. § 1324a(e)(4)-(5) ....................................................... 5

8 U.S.C. § 1324a(e)(7) ......................................................... 1, 6

8 U.S.C. § 1324a(e)(8) ........................................................... 6

Pub. L. No. 79-404, § 11, 60 Stat. 237, 244 (1946) .................... 6, 27

5 U.S.C. § 1202(d) .......................................................... 6, 8, 18

5 U.S.C. § 3105 ................................................................. 18

5 U.S.C. § 7521 ............................................................ 4, 9, 28

5 U.S.C. § 7521(a) ...................................................... 1, 6, 7, 14, 18

6 U.S.C. § 521 ................................................................... 5

28 U.S.C. § 1331 ................................................................. 3

28 U.S.C. § 1346(a)(2) ........................................................... 3

**Regulations:**

8 C.F.R. § 274a.2(a)(2) .......................................................... 5

28 C.F.R. § 0.118 .............................................................. 5, 6

28 C.F.R. § 68.31 ................................................................ 5

28 C.F.R. § 68.39 ............................................................................... 15

28 C.F.R. § 68.52(b) ......................................................................... 15

28 C.F.R. § 68.52(e) ......................................................................... 16

28 C.F.R. § 68.53 .............................................................................. 16

28 C.F.R. §§ 68.53-68.54 .................................................................... 6

28 C.F.R. § 68.54 ......................................................................... 1, 16

28 C.F.R. § 68.55 ........................................................................... 1, 6

**Rules:**

Fed. R. App. P. 4(a)(1)(B) ................................................................... 3

11th Cir. R. 28-5 ................................................................................ 2

**Other Authority:**

2 Paul R. Verkuil et al., Administrative Conference of the
    United States, Recommendations and Reports:
    *The Federal Administrative Judiciary* (1992) ............................... 14, 15

**INTRODUCTION**

By statute, employers are obligated to comply with certain requirements designed to ensure that noncitizens working in the United States do so only with appropriate authorization and documentation. *See* 8 U.S.C. § 1324a. Congress has charged the Department of Justice with responsibility for adjudicating alleged violations of these requirements. The initial phase of these adjudications is overseen by administrative law judges (ALJs), who issue findings that are then susceptible to two further layers of de novo administrative review. *Id.* § 1324a(e)(3), (7); *see* 28 C.F.R. § 68.54 (authorizing review by the Chief Administrative Hearing Officer); *id.* § 68.55 (authorizing review by the Attorney General). Like all ALJs, these ALJs are afforded a measure of decisional independence through a statutory provision that allows ALJs across the Executive Branch to be removed from office only upon a showing of "good cause." 5 U.S.C. § 7521(a).

In recent years, several courts of appeals have heard challenges to the constitutionality of the ALJ removal statute brought by litigants who assert that it impermissibly insulates ALJs from the President's control. All four circuits to have considered whether a plaintiff was entitled to relief on such a claim have answered that question in the negative, concluding either that Section 7521(a) is constitutional or, even if not, that the plaintiff would not be entitled to enjoin or invalidate the challenged agency action on that basis. *See K&R Contractors, LLC v. Keene*, 86 F.4th 135, 149 (4th Cir. 2023); *Calcutt v. FDIC*, 37 F.4th 293, 317-20 (6th Cir. 2022), *rev'd on*

*other grounds*, 598 U.S. 623 (2023) (per curiam); *Decker Coal Co. v. Pehringer*, 8 F.4th 1123, 1129-38 (9th Cir. 2021); *Leachco, Inc. v. Consumer Prod. Safety Comm'n*, 103 F.4th 748, 763-64 (10th Cir. 2024). All four decisions were unanimous.[1]

This suit arises from an enforcement action before the Department in which plaintiff-appellee Walmart, Inc. is alleged to have committed more than 11,000 violations of its record-keeping obligations under Section 1324a. Dkt. 7-1 at 3, ¶ 4.[2] Walmart requested an ALJ hearing and contested liability for most of the alleged violations. *Id.* at 3, ¶ 5. But before the ALJ had an opportunity to consider the merits of that contention, Walmart sued in federal court, alleging that the ALJ's removal protections are unconstitutional and that the administrative proceeding should be enjoined on that basis.

The district court accepted that argument and entered a permanent injunction that prohibits the Department from determining whether Walmart violated its statutory obligations. The district court's reasoning, which categorically held that the ALJ removal statute is unconstitutional, applies with equal force to each of the nearly two thousand ALJs across the Executive Branch. And the court refused to sever the purportedly unconstitutional portion of the statute, leaving the Department paralyzed

---

[1] In *Calcutt*, Judge Murphy dissented from the majority's resolution of other claims, but he agreed that the plaintiff was not entitled to relief based on the challenge to the ALJ removal protections. *See Calcutt*, 37 F.4th at 336 (Murphy, J., dissenting).

[2] References to the record are to the district court's docket number and to the page number of that document assigned by the court reporter. 11th Cir. R. 28-5.

from enforcing the law against Walmart unless and until Congress amends the statute. Dkt. 33, at 11. The district court's reasoning suggests that any other party in an administrative enforcement proceeding before an ALJ would be entitled to the same relief.

The district court's judgment should be reversed. First, precedent establishes that subordinate officials like ALJs can permissibly have "good cause" protections from removal. Second, the Supreme Court has made clear that plaintiffs may obtain relief based on a challenge to a removal restriction only if they suffered prejudice resulting from that restriction. *See Collins v. Yellen*, 594 U.S. 220, 259-60 (2021). Yet, the district court issued an injunction without purporting to identify any way in which Walmart was harmed by the ALJ's removal restriction here. And third, any unconstitutional portions of the statute can be severed, ensuring that the President can constitutionally oversee the Executive Branch while leaving the Department capable of enforcing the law and performing the duties Congress prescribed. Severance—rather than a permanent injunction pending speculative legislative action—is the appropriate response should Walmart succeed on the merits.

## STATEMENT OF JURISDICTION

Plaintiff invoked the district court's jurisdiction under 28 U.S.C. §§ 1331, 1346(a)(2). *See* Dkt. 1, at 4. The district court entered final judgment on March 25, 2024, Dkt. 34, and the defendants filed a timely notice of appeal on May 21, 2024. *See* Dkt. 35; Fed. R. App. P. 4(a)(1)(B).

## STATEMENT OF THE ISSUE

**1.** Whether 5 U.S.C. § 7521's "good cause" standard for removing ALJs from office violates Article II of the Constitution.

**2.** Whether Walmart has demonstrated that the challenged removal provision caused it harm in the administrative proceeding.

**3.** Whether the proper response to any constitutional infirmity in Section 7521 would be severance, rather than a permanent injunction that prohibits the government from enforcing the immigration laws.

## STATEMENT OF THE CASE

### A.    Statutory Background

**1.** Through the Immigration and Nationality Act, Congress has provided a reticulated framework for allowing and regulating immigration into the United States. As part of that statutory scheme, Congress has authorized noncitizens to work in the United States in a variety of circumstances. *See, e.g.*, 8 U.S.C. § 1160(a)(1)-(2) (work authorization for special agricultural workers); *id.* § 1184(c)(2)(E) (certain noncitizen spouses may "engage in employment in the United States"); *id.* § 1254a(a)(1)-(2) (noncitizens granted temporary protected status may "engage in employment in the United States"); *Ayanian v. Garland*, 64 F.4th 1074, 1081 (9th Cir. 2023) (lawful permanent residents may "live and work permanently in the United States").

Consistent with that scheme, Congress has also prohibited the employment of noncitizens who are not authorized to work in the United States. 8 U.S.C.

§ 1324a(a)(1)-(2).  To effectuate that prohibition, Congress directed that employees "must attest, under penalty of perjury," that they are a U.S. citizen or national, a lawful permanent resident, or a noncitizen with work authorization.  *Id.* § 1324a(b)(2). Employees usually verify their eligibility for employment through an I-9 form.  8 C.F.R. § 274a.2(a)(2).  U.S. employers, in turn, must retain copies of these I-9 forms, so that they can be inspected by federal officials to ensure compliance with the statutory scheme.  8 U.S.C. § 1324(b)(3).  Congress authorized the Executive Branch to investigate potential violations of the Act, and the Attorney General may hold a hearing to determine whether there has been a violation.  *Id.* § 1324a(e)(1)-(3).  An employer who violates the Act may be subject to cease-and-desist orders and civil money penalties.  *Id.* § 1324a(e)(4)-(5).

Because the Attorney General cannot personally adjudicate all potential violations, Congress provided that hearings "shall be conducted before an administrative law judge."  8 U.S.C. § 1324a(e)(3)(B).  By regulation, the Attorney General assigns such adjudications to ALJs within the Department of Justice's Executive Office for Immigration Review.  *See* 6 U.S.C. § 521; 28 C.F.R. § 0.118.  The ALJ plays a solely adjudicatory role— ALJs may not initiate investigations, be involved in investigations, or initiate hearings to determine if there has been a violation.  *See* 5 U.S.C. § 554(d)(2); 28 C.F.R. § 68.31 (barring anyone involved in an investigation from advising an ALJ).  The ALJ may, among other things, administer oaths, issue subpoenas, take depositions, and dispose of procedural requests.  5 U.S.C.

§ 556(c).  The ALJ's exercise of those powers is "[s]ubject to published rules of the agency."  *Id.*

After the ALJ issues a decision, the employer can seek further review before the Chief Administrative Hearing Officer within the Executive Office for Immigration Review.  8 U.S.C. § 1324a(e)(7); 28 C.F.R. §§ 68.53-68.54.  And the Attorney General is empowered to review that decision as well.  8 U.S.C. § 1324a(e)(7); 28 C.F.R. § 68.55.  If the final order is adverse to an employer, the employer may seek judicial review in the courts of appeals.  8 U.S.C. § 1324a(e)(8).

**2.**  The ALJs within the Executive Office for Immigration Review are appointed by the Attorney General, whom the President may remove at will.  *See Morrison v. Olson*, 487 U.S. 654, 692 (1988).  The Chief Administrative Hearing Officer, who reviews ALJ decisions, holds his office solely by regulation, 28 C.F.R. § 0.118, and may be removed by the Attorney General at will.

Congress created the position of ALJ—then called hearing examiner—when it enacted the Administrative Procedure Act in 1946.  Pub. L. No. 79-404, § 11, 60 Stat. 237, 244 (1946).  Congress provided that agencies may remove ALJs only for "good cause established and determined by the Civil Service Commission," *id.*, whose functions were later transferred to the Merit Systems Protection Board (MSPB).  The current "good cause" removal standard for ALJs is codified at 5 U.S.C. § 7521(a).  Members of the MSPB "may be removed by the President only for inefficiency, neglect of duty, or malfeasance in office."  *Id.* § 1202(d).

### B.    Factual Background and Prior Proceedings

In 2018, the government conducted inspections of 20 Walmart facilities across the country.  Dkt. 7-1, at 2, ¶ 2 (Decl. of Daniel Brown).  As a result of those investigations, the government informed Walmart that it had identified over 11,000 violations of Walmart's I-9 recordkeeping obligations.  *Id.* at 3, ¶ 4.  Walmart requested an ALJ hearing and contested liability for most of the alleged violations.  *Id.* ¶ 5.  All twenty cases were assigned to Chief ALJ Jean King.  *Id.* ¶ 7.

Six months later, while the ALJ proceeding was still ongoing, Walmart filed suit in district court, seeking injunctive relief against the United States, the Attorney General, the Director of Immigration and Customs Enforcement, the ALJ, and the Chief Administrative Hearing Officer.  Dkt. 1, at 4.  The complaint alleged that the administrative hearing was unconstitutional because the ALJ was unconstitutionally shielded from removal by the President.  *Id.* at 6.  Walmart also moved for a preliminary injunction.  Dkt. 7.

With the parties' consent, the district court construed Walmart's motion for a preliminary injunction as a motion for summary judgment and the government's response as a cross-motion for summary judgment.  Dkt. 33, at 2-3.  The court then granted summary judgment to Walmart, denied the government's cross-motion, and enjoined the ALJ from continuing the ongoing hearing.  *Id.* at 12.

The district court first held that the statute governing ALJ removals for "good cause," 5 U.S.C. § 7521(a), was unconstitutional.  Dkt. 33, at 6-9.  The court

determined that the statute "creates a multilevel protection from removal," Dkt. 33 at

7, because the Attorney General may remove ALJs for cause, and ALJ removals are

reviewed by the MSPB, whose members are removable by the President only for

"inefficiency, neglect of duty, or malfeasance in office," 5 U.S.C. § 1202(d).  Citing

*Free Enterprise Fund v. Public Company Accounting Oversight Board*, 561 U.S. 477, 484

(2010), the court concluded that such "double insulation" is categorically prohibited.

Dkt. 33, at 7.

As to remedy, the district court concluded that Walmart was entitled to a

judgment that permanently enjoined the Department of Justice from adjudicating

whether Walmart violated its statutory responsibilities.  Dkt. 33, at 10-12.  The court

recognized that when a statute is declared unconstitutional, Supreme Court precedent

requires severance of the statute to "suppl[y] a workable solution."  *Id.* at 11 (quoting

*Barr v. American Ass'n of Political Consultants, Inc.*, 591 U.S. 610, 626 (2020)).  The court

concluded, however, that "severability is not the proper solution here," stating

without elaboration that "an equitable remedy is more favorable."  Dkt. 33, at 11.

The court appeared to base that conclusion on its belief that a permanent injunction

against the Executive Branch would leave Congress "with the ability to remedy the

problem as it pleases."  *Id.* at 11.

## C.    Standard of Review

The Court reviews legal questions de novo, including whether a statute is

constitutional.  *United States v. Tinoco*, 304 F.3d 1088, 1099 (11th Cir. 2002).

8

## SUMMARY OF ARGUMENT

The district court concluded that the statute specifying that ALJs may be removed from office only for "good cause," 5 U.S.C. § 7521, is facially unconstitutional. On that basis, the court entered a permanent injunction precluding the government from completing an adjudication of whether Walmart committed repeated violations of its recordkeeping obligations under federal immigration law. In doing so, the court committed three distinct errors, each of which independently warrants reversal.

*First*, Section 7521 is consistent with the President's authority under Article II of the Constitution to control the exercise of executive power. The Supreme Court has long upheld removal restrictions for inferior officers like ALJs. Nothing in the Constitution prevents Congress from extending a measure of tenure protection to subordinate adjudicators whose decisions are subject to de novo review by politically accountable officials.

*Second*, the Supreme Court has made clear that a party challenging the constitutionality of a removal restriction is entitled to relief only if the challenged provision "inflict[ed] compensable harm" on the plaintiff. *Collins v. Yellen*, 594 U.S. 220, 259 (2021). All four courts of appeals to have considered whether to enjoin or overturn agency action based on a challenge to Section 7521 have concluded that relief was unavailable under *Collins*. The district court here did not perform a *Collins*

analysis and, even if it had, there would have been no basis for the court to have reached a divergent result here.

*Third*, if Section 7521 is unconstitutional in whole or in part, the district court erred by not severing the constitutionally infirm provision. The Supreme Court has repeatedly held in closely analogous cases that severance is the proper response under these circumstances. Yet, the district court instead entered a permanent injunction that will prevent adjudication of Walmart's alleged violations unless and until Congress acts. In precluding the government from enforcing duly enacted statutes, the district court departed from binding precedent and failed to heed Congress's design.

## ARGUMENT

## I. The ALJ's Removal Protections Are Constitutional

The Supreme Court has long held that subordinate officials within the Executive Branch can be afforded a measure of protection from removal without unconstitutionally impairing the President's powers under Article II of the Constitution. The "good cause" removal protection that Congress has afforded to ALJs, including the one assigned to Walmart's proceeding, is consistent with those precedents and the district court erred in concluding otherwise.

10

### A.    Congress may provide inferior officers like ALJs with a measure of protection against removal

The Constitution distinguishes between two types of officers, "principal officers," such as the Attorney General, and "inferior Officers" whose "work is directed and supervised at some level by others" in the Executive Branch "below the President." *Edmond v. United States*, 520 U.S. 651, 692-63 (1997). The Constitution provides an exclusive method for the appointment of principal officers, but authorizes Congress to "vest the Appointment of such inferior Officers, as they think proper, in, . . . the Heads of Departments." U.S. Const. art. II, § 2, cl. 2.

For more than 130 years, the Supreme Court has recognized that nothing in the Constitution requires a Department Head who has been granted appointment authority by Congress to have unfettered discretion to remove his appointees. In *United States v. Perkins*, 116 U.S. 483 (1886), an inferior officer in the Navy challenged his removal without cause as unlawful, as Congress had provided that such inferior officers could be removed in peacetime only pursuant to a court-martial sentence. *Id.* at 483-84. The Supreme Court agreed, holding that it "ha[d] no doubt" that Congress "may limit and restrict the power of removal" for inferior officers. *Id.* at 485. As the Supreme Court subsequently explained, this "legislative power" to regulate "removals in the case of inferior executive officers" flows from the Appointments Clause itself. *Myers v. United States*, 272 U.S. 52, 127 (1926). Just as the "power to remove" is traditionally considered "an incident of the power to appoint," so also "the power of

11

Congress to regulate removals" is "incidental to the exercise of its constitutional power to vest appointment[]" power in the Heads of Departments.  *Id.* at 161.

In the modern era, the Supreme Court has reaffirmed that Congress may impose limitations on a Department Head's exercise of the removal power.  In *Morrison v. Olson*, 487 U.S. 654 (1988), the Court upheld a "good cause" removal restriction for an independent counsel appointed to investigate and prosecute serious crimes committed by certain high-ranking executive officers.  *Id.* at 685-93.  *Morrison* did not decide "exactly what is encompassed within the term 'good cause,'" but stressed its understanding that "the Attorney General may remove an independent counsel for 'misconduct.'"  *Id.* at 692.  Through that removal authority, the Court stated, the President "retains ample authority to assure that the counsel is competently performing his or her statutory responsibilities."  *Id.*  Although the independent counsel exercised "discretion and judgment" in carrying out his responsibilities, the Court concluded that "the President's need to control the exercise of that discretion [was not] so central to the functioning of the Executive Branch as to require as a matter of constitutional law that the counsel be terminable at will by the President."  *Id.* at 691-92.  The idea that inferior officers must be removable at will "has never been the law."  *Id.* at 724 n.4 (Scalia, J., dissenting) (arguing that the President must have "plenary power to remove principal officers" like the Attorney General, but that the Constitution "does not require that [the President] have plenary power to remove inferior officers").

12

Other recent Supreme Court decisions have likewise acknowledged Congress's power to regulate department heads' removal of inferior officers. *See Seila Law LLC v. CFPB*, 591 U.S. 197, 204 (2020) (recognizing that *Perkins* and *Morrison* establish at least that "Congress could provide tenure protections to certain inferior officers with narrowly defined duties" (emphasis omitted)); *Free Enter. Fund v. Public Co. Accounting Oversight Bd.*, 561 U.S. 477, 493 (2010) (confirming that the Court "has upheld for-cause limitations" on removal of inferior officers). Perhaps most tellingly, in *United States v. Arthrex, Inc.*, 594 U.S. 1 (2021), the Supreme Court *restored* the removal protections of executive branch adjudicators who perform functions similar to those of ALJs. Although the court of appeals had invalidated those officers' removal restrictions to remedy an Appointments Clause violation, *id.* at 25-26 (plurality op.), the Supreme Court imposed a different remedy, thereby preserving the adjudicators' removal protections, *id.; see also id.* at 44 (Breyer, J., concurring in the judgment in part and dissenting in part) (agreeing with plurality's choice of remedy).

Of course, Congress does not have unlimited authority to shield officials wielding executive power from removal. Under Article II, Congress cannot impose any restriction that prevents the President from ensuring that the laws are faithfully executed or "deprive[s] the President of adequate control" over the official's exercise of executive power. *Free Enter. Fund*, 561 U.S. at 508; *see also Morrison*, 487 U.S. at 658. Within those bounds, Congress may regulate the conditions for removal of inferior officers.

**B.    The ALJ here is subject to constitutionally sufficient oversight and control by politically accountable officials**

Under these precedents, the statute affording ALJs a measure of removal protection readily satisfies constitutional requirements.  This is particularly evident as applied to the ALJ hearing Walmart's case, who is removable by the Attorney General, who is himself removable at will by the President.

Nearly 80 years ago, Congress created the positions now-known as ALJs to serve as "semi-independent subordinate hearing officers" within agencies.  *Ramspeck v. Federal Trial Exam'rs Conference*, 345 U.S. 128, 132 (1953) (quotation marks omitted). In doing so, Congress sought to balance two competing priorities.  On the one hand, Congress sought to enable ALJs to "perform their evidentiary factfinding function free from agency coercion."  2 Paul R. Verkuil et al., Administrative Conference of the United States, Recommendations and Reports: *The Federal Administrative Judiciary* 803 (1992).  ALJs were afforded a "qualified right of decisional independence," *Nash v. Califano*, 613 F.2d 10, 15 (2d Cir. 1980), designed to rebut allegations that ALJs might be "mere tools of the agency," *Ramspeck*, 345 U.S. at 131.  To that end, Congress has directed that an agency may remove an ALJ "only for good cause established and determined by the Merit Systems Protection Board on the record after opportunity for hearing before the Board."  5 U.S.C. § 7521(a).  This decision followed a pre-existing practice of affording removal protection to executive branch adjudicators.  *See, e.g.*, Act of Feb. 24, 1855, ch. 122, 10 Stat. 612 (Court of Claims);

Act of June 17, 1930, ch. 497, §§ 518, 646, 46 Stat. 590, 737-39, 762 (Customs Court and Court of Customs and Patent Appeals).

On the other hand, Congress sought to ensure that "the agency retains full power over policy." Verkuil, *supra*, at 803. The Administrative Procedure Act accordingly gives agencies plenary power to review and reverse ALJs' initial decisions. *See* 5 U.S.C. § 557(b). And even under Section 7521(a)'s "good cause" standard, an ALJ can be removed for refusing to follow binding legal or policy judgments announced by the agency, as well as for misconduct or substantially deficient job performance. Under that arrangement, "policy responsibility remains exclusively with the agency while the public has assurance the facts are found in the first instance by an official not subject to agency coercion." Verkuil, *supra*, at 803.

Consistent with that design, the regulations governing adjudications under 8 U.S.C. § 1324a, such as the enforcement proceeding brought against Walmart, assure that politically accountable officials are ultimately responsible for the exercise of executive power. The ALJ conducts an administrative hearing, *see* 28 C.F.R. § 68.39, and issues an order, *see id.* § 68.52(b) containing factual and legal determinations regarding whether a violation has occurred. But, crucially, the ALJ's order is not a final agency order until both the politically accountable Chief Administrative Hearing Officer and the politically accountable Attorney General have had an opportunity to modify or vacate the ALJ's decision. *See id.* § 68.52(e); *see also id.* §§ 68.54 (review by Chief Administrative Hearing Officer), 68.55 (review by the

15

Attorney General).  Even an ALJ's interlocutory orders can be immediately reviewed by the Chief Administrative Hearing Officer.  *See id.* § 68.53.

This design comports with constitutional requirements.  As the Ninth Circuit explained in rejecting a materially identical challenge to the removal restrictions for ALJs within the Department of Labor, "ALJs are judges who make decisions that are subject to vacatur by people without tenure protection."  *Decker Coal Co. v. Pehringer*, 8 F.4th 1123, 1135 (9th Cir. 2021).  They also perform an "adjudicatory" function rather than "policymaking and enforcement functions" and "cannot sua sponte initiate investigations."  *Id.* at 1133.  Under that structure, the President "continues to enjoy an 'ability to execute the laws—by holding his subordinates accountable for their conduct.'"  *Id.* at 1135; *see also Leachco, Inc. v. Consumer Prod. Safety Comm'n*, 103 F.4th 748, 764 (10th Cir. 2024) (rejecting challenge to CPSC ALJ and "find[ing] the Ninth Circuit's analysis in *Decker Coal* persuasive"); *Calcutt v. FDIC*, 37 F.4th 293, 319 (6th Cir. 2022) ("[W]e doubt Calcutt could establish a constitutional violation from the [FDIC] ALJ removal restrictions."), *rev'd on other grounds*, 598 U.S. 623 (2023) (per curiam); *but see Jarkesy v. SEC*, 34 F.4th 446, 464 (5th Cir. 2022) (concluding in a divided opinion that ALJ removal protections are unconstitutional, at least when applied to an agency where the Department Head is understood to also have removal protections), *aff'd on other grounds*, 144 S. Ct. 2117 (2024).

These decisions are consistent with Supreme Court precedents recognizing that administrative adjudicators are adequately supervised so long as their decisions are

subject to higher levels of administrative review.  There is no constitutional requirement that a principal officer be able to "influence (by threat of removal or otherwise) the outcome of individual proceedings" being adjudicated before an inferior officer; it is sufficient that the adjudicator have "no power to render a final decision on behalf of the United States unless permitted to do so by other Executive officers." *Edmond*, 520 U.S. at 664; *see also Arthrex,* 594 U.S. at 24-27.  Here, because Walmart's ALJ cannot issue a final decision unless permitted to do so by the Chief Administrative Hearing Officer and the Attorney General, the ALJ's protection against removal without cause raises no constitutional concern.

### C.    The district court misunderstood and misapplied *Free Enterprise Fund*

In concluding that ALJs are nonetheless unconstitutionally shielded from removal, the district court proceeded on the premise that ALJs have *multiple* layers of removal protection, which the district court believed to be categorically impermissible under *Free Enterprise Fund*, 561 U.S. 477.  Dkt. 33, at 7.  In *Free Enterprise Fund*, the Supreme Court concluded that members of the Public Company Accounting Oversight Board, a regulatory body overseen by the Securities and Exchange Commission (SEC), could not have removal protections given the Court's understanding that SEC Commissioners also have removal protections.

The district court's application of *Free Enterprise Fund* suffers from two defects.  First, the ALJ here has only a single layer of removal protection in the relevant sense.

17

And second, in any event, the facts here bear no resemblance to those of *Free Enterprise Fund* and that case expressly disclaimed that it was establishing a categorical rule that would invalidate ALJ removal protections.

    **1.**  ALJs at the Department of Justice are appointed by the Attorney General, *see* 5 U.S.C. § 3105, who has the authority to remove them for good cause, *id.* § 7521(a).  There is no dispute that the Attorney General can be removed by the President at will.  Thus, within the Department of Justice, there is only a single layer of statutory removal restrictions that separates the President from an ALJ.

    In concluding that Section 7521 nonetheless furnishes ALJs with a second layer of removal protection, the district court pointed to the role of the MSPB, which is charged with reviewing any determination by the Attorney General that there is good cause for removal.  *See* 5 U.S.C. § 7521(a) (providing that removal can occur once the existence of good cause is "established and determined" by the MSPB).  MSPB members are removable by the President "for inefficiency, neglect of duty, or malfeasance in office," *id.* § 1202(d).  The district court understood the MSPB to constitute an impermissible second layer of removal protection, but it was wrong to do so.

    Under Section 7521, the MSPB does not make a policy judgment as to whether an ALJ should be removed.  As the MSPB recently clarified, the Board's role in proceedings under that statute is limited to reviewing the agency's determination that good cause for removal exists.  *See HHS v. Jarboe*, 2023 M.S.P.B. 22, ¶ 6 (2023); *SSA v.*

*Levinson*, 2023 M.S.P.B. 20, ¶¶ 37-38 (2023). The MSPB's performance of that function accordingly does not add to the tenure protection enjoyed by an ALJ; rather, the MSPB simply enforces the "good cause" protection separately provided by the statute.

The MSPB's function thus mirrors the role that courts traditionally play in reviewing claims that an officer has been improperly removed.  The Supreme Court has seen no "constitutional problem" in "judicial review of the removal decision" because the "possibility of judicial review does not inject the Judicial Branch into the removal decision, nor does it, by itself, put any additional burden on the President's exercise of executive authority."  *Morrison*, 487 U.S. at 693 n.33.  The same was true in *Perkins* as well, where it was solely for the federal courts to determine if the Navy officer had been properly removed.  116 U.S. at 485.  And if it is constitutional for a court—wholly beyond the control of the President—to adjudicate whether cause for removal has been demonstrated, it is *a fortiori* constitutional for the MSPB (which is *more* accountable to the President) to conduct the same adjudication, because doing so does not "put any additional burden on the President's exercise of executive authority."  *Morrison*, 487 U.S. at 693 n.33.

This arrangement stands in sharp contrast to *Free Enterprise Fund*, where the Supreme Court found that there were multiple levels of removal protection because (1) the inferior officers (the PCAOB Board members) could only be removed by the Department Head for specified reasons, and (2) the Department Head (the SEC

Commissioners) could only be removed by the President for cause. *Free Enterprise Fund* recognized that such vertical integration of removal protections—which attenuate the President's power to initiate removal of an inferior officer—can frustrate the President's ability to control the inferior officers shielded by multiple levels of removal protection. But here, there is no question that the President could remove the Attorney General for any reason, including a refusal to remove an ALJ for "good cause." Like the scheme in *Morrison* and *Perkins*, that represents a *single* layer of removal restriction, consistently understood to be constitutional for inferior officers.

**2.** Even if the MSPB's role were thought to provide a second layer of removal protection, the district court's ruling would still rest on a misreading of *Free Enterprise Fund*. While the district court apparently understood that decision to stand for the categorical proposition that two levels of removal protection are always impermissible, that decision "did not broadly declare all two-level for-cause protections for inferior officers unconstitutional." *Decker Coal*, 8 F.4th at 1132. On the contrary, *Free Enterprise Fund* emphasized that it was not making a "general pronouncement[]" that "two levels of good-cause tenure" are always unconstitutional and should not "cast doubt on the use of what is colloquially known as the civil service system within independent agencies," 561 U.S. at 505-07. The Court also made explicit that its holding did "not address that subset of independent agency employees who serve as administrative law judges," who "perform adjudicative rather

20

than enforcement or policymaking functions." *Id.* at 507 n.10. *See supra* pp. 5-6 (discussing the ALJ's circumscribed duties).

Indeed, the facts of *Free Enterprise Fund* bear no resemblance to those present here. *Free Enterprise Fund* did not concern subordinate adjudicators akin to ALJs, but rather a Board that was "the regulator of first resort and the primary law enforcement authority for a vital sector of our economy." 561 U.S. at 508. The removal protections at issue in the two cases are also entirely dissimilar. In *Free Enterprise Fund*, an "unusually high standard" governed the removal of Board members, permitting removal only for "willful violations" of certain laws and rules, "willful abuse of authority," or "unreasonable failure to enforce compliance." *Id.* at 503. The Supreme Court's analysis of a Board exercising such sweeping regulatory authority and shielded by such stringent removal protections should not be understood to have disturbed the far more modest "good cause" protections for ALJs, which have co-existed with the President's oversight of the Executive Branch for many decades. Since the APA was enacted in 1946, ALJs have been removable only for good cause "established and determined" by an adjudicative body within the Executive Branch—first the Civil Service Commission and then the MSPB (whose members are not removable at will). *See supra* p. 6. The district court accordingly erred in mechanically extending reasoning applicable to a Board structure that was without "historical precedent," *id.* at 505, to invalidate ALJ removal protections that have long been a central feature of administrative adjudication.

## II.    Walmart Was Not Entitled To Relief Because It Failed To Show That The ALJ's Removal Protections Cause Walmart Any Harm

Even if the ALJ's removal protections created a separation-of-powers problem, the district court still erred in concluding that the appropriate response would be a permanent injunction that prevents the Department from determining whether Walmart violated its statutory obligations.  As the Supreme Court explained, a plaintiff challenging a removal restriction is entitled to relief only when the challenged restriction "inflict[ed] compensable harm" on the plaintiff.  *Collins v. Yellen*, 594 U.S. 220, 259 (2021).  The district court made no such compensable harm finding here and there would have been no basis for doing so.

An unconstitutional removal provision "does not strip" the officer "of the power to undertake the other responsibilities of his office."  *Collins*, 594 U.S. at 258 n.23.  In other words, the "mere existence of an unconstitutional removal provision . . . generally does not automatically taint Government action by an official unlawfully insulated."  *Id.* at 267 (Thomas, J., concurring).  Accordingly, to obtain relief based on an allegedly invalid removal restriction, the plaintiff must show that the provision actually prejudiced the President's control of the administrative proceeding—for example, by identifying a public statement in which the President "express[es] displeasure with actions taken by" the unlawfully insulated official and "assert[s] that he would remove" that official "if the statute did not stand in the way."  *Id.* at 259-60 (majority op.).  Parties asserting removal claims "are not automatically entitled to

22

relief—they must show that the removal provision caused some harm to them beyond the mere existence of the unconstitutional provision." *Leachco*, 103 F.4th at 757.

Accordingly, all four courts of appeals to have considered whether to award relief based on the alleged unconstitutionality of Section 7521 have concluded that, even assuming the provision is unconstitutional, no relief was warranted in the absence of a demonstration of prejudice as required by *Collins*. *See K&R Contractors, LLC v. Keene*, 86 F.4th 135, 150 (4th Cir. 2023) ("Because the ALJs were exercising the lawful authority of their offices, and K & R does not claim that the allegedly unconstitutional removal provisions caused it any harm, K & R is not entitled to any relief on its removal protections claim."); *Leachco*, 103 F.4th at 765 ("[U]nder *Collins*, to be entitled to relief, [plaintiff] needed to demonstrate how the allegedly unconstitutional removal protections for . . . ALJs actually affected, or will affect, the [agency's] actions against it."); *Calcutt*, 37 F.4th at 318 ("Even if we were to accept that the removal protections for the FDIC ALJs posed a constitutional problem, Calcutt is not entitled to relief unless he establishes that those protections 'inflict[ed] compensable harm,' and he has not made this showing." (alteration in original) (quoting *Collins*, 141 S. Ct. at 1789)); *Decker Coal*, 8 F.4th at 1138 (denying relief where

23

that was "no link between the ALJ's decision awarding benefits and the allegedly unconstitutional removal provisions").[3]

The courts of appeals have also uniformly applied the remedial rule from *Collins* to plaintiffs challenging other removal protections as well. *See CFPB v. Law Offices of Crystal Moroney, P.C.*, 63 F.4th 174, 179-81 (2d Cir. 2023); *Kaufmann v. Kijakazi*, 32 F.4th 843, 849-50 (9th Cir. 2022); *Community Fin. Servs. Ass'n of Am. v. CFPB*, 51 F.4th 616, 631-33 (5th Cir. 2022), *denying cert. to review this holding*, 143 S. Ct. 981 (2023), *rev'd on other grounds*, 601 U.S. 416 (2024).[4]  And they have recognized that "*Collins*' relief analysis applies to both retrospective and prospective relief." *Leachco*, 103 F.4th at 757 (noting agreement with cases from the Second, Fifth, and Sixth Circuits).

The district court here did not perform a *Collins* analysis or otherwise make any finding that the ALJ removal protections cause Walmart compensable harm.  That error alone is sufficient basis for setting aside the district court's order.

The record here also would not have provided any basis for concluding that Walmart can demonstrate that the ALJ's removal protections would cause any prejudice to it.  Consistent with *Collins* and the cases applying it, there are "three

----

[3] In *Jarkesy,* the Fifth Circuit acknowledged *Collins*, but did not reach the question of whether to vacate challenged agency action based on an ALJ's unconstitutional removal protections.  *See* 34 F.4th at 463 n.17.

[4] This Court is considering the "compensable harm" standard for relief on removal challenges in *Rodriguez v. Social Security Administration*, No. 22-13602 (11th Cir. argued Dec. 6, 2023).

requisites for proving harm: (1) a substantiated desire by the President to remove the unconstitutionally insulated actor, (2) a perceived inability to remove the actor due to the infirm provision, and (3) a nexus between the desire to remove and the challenged actions taken by the insulated actor." *Community Fin. Servs. Ass'n*, 51 F.4th at 632. Walmart introduced no evidence and made no allegations that could satisfy any of these requirements.

In materially identical circumstances, the Tenth Circuit affirmed the denial of a preliminary injunction sought by plaintiff who argued that an ongoing administrative proceeding was unconstitutionally structured because of the ALJ's removal protections. *See Leachco*, 103 F.4th at 765. Applying *Collins*, the Court explained that the plaintiff "failed to make any showing that, but for the allegedly unconstitutional removal provisions, . . . ALJ Young would have been removed, the [administrative] proceedings against it would not be occurring, or the proceedings would be different in any way." *Id.* at 757. Because the plaintiff "failed completely to make such a showing," there was no basis for injunctive relief. *Id.* at 758; *see also* Dkt. 18, at 8 (defendants making the same argument). The same rule applies here.

## III.    If Section 7521 Is Unconstitutional, The Correct Response Is To Sever The Unconstitutional Portion Of The Statute

The district court compounded its errors by enjoining the proceeding against Walmart unless and until Congress acts. Were the district court correct that Section 7521 is unconstitutional and that Walmart is entitled to relief on that basis, the proper

course would have been to sever the portion of Section 7521 responsible for the constitutional infirmity, allowing the statute to operate prospectively in a constitutional manner.  This approach would have conformed to the Supreme Court's instruction that "when confronting a constitutional flaw in a statute, [a court should] try to limit the solution to the problem" by disregarding the "problematic portions while leaving the remainder intact."  *Arthrex*, 594 U.S. at 23 (quoting *Ayotte v. Planned Parenthood of N. New England*, 546 U.S. 320, 328-329 (2006)); *see Barr v. American Ass'n of Political Consultants, Inc.*, 591 U.S. 610, 627 (2020) (rejecting the proposition a litigant may "ride a discrete constitutional flaw in a statute to take down the whole, otherwise constitutional statute").

Over the past fifteen years, whenever the Supreme Court has found a structural constitutional defect in the appointment or removal provisions of a statute, it has consistently excised the problematic provision, while preserving the balance of the statute.  In *Free Enterprise Fund*, the Court rejected the argument that the unconstitutionally structured Board should be precluded from all exercises of authority and instead merely excised the Board members' removal protections.  *See* 561 U.S. at 508-10.  Similarly, in *Seila Law*, the Court severed the removal protections for the CFPB Director, thereby using "a scalpel rather than a bulldozer in curing the constitutional defect." 591 U.S. at 237.  The Supreme Court also employed similarly tailored relief in *Collins*, *see* 594 U.S. at 256, and in *Arthrex*, *see* 594 U.S. at 23.

The district court here opted for "a permanent injunction instead of severability," reasoning that this approach would avoid "interfering with Congress's legislative role by trying to re-work the statutes in place" and ensure that Walmart is protected while "Congress is left with the ability to remedy the problem as it pleases." Dkt. 33, at 11. This ruling cannot be reconciled with decisions from the Supreme Court expressly rejecting calls for analogous relief that would render a statute effectively inoperative unless and until Congress takes action. *See, e.g., Seila Law*, 591 U.S. at 232-38; *Arthrex*, 594 U.S. at 24.

Nothing about this case calls for a different approach. The ALJ "good cause" provision was originally enacted as part of the Administrative Procedure Act in 1946. Pub. L. No. 79-404, § 11, 60 Stat. at 244. Thus, for severance, the question is whether "Congress, faced with the limitations imposed by the Constitution," *Free Enter. Fund*, 561 U.S. at 509, would "have preferred what is left of its statute to no statute at all," *Ayotte*, 546 U.S. at 330. As between complete administrative paralysis and ALJs without removal protections, it should be "clear that Congress would prefer" that the courts "cur[e] the constitutional defect." *Seila Law*, 591 U.S. at 237.

Notably, while Congress may prefer that ALJs have "good cause" removal restrictions, such restrictions are not constitutionally required. *See Kalaris v. Donovan*, 697 F.2d 376, 381 (D.C. Cir. 1983) (holding that adjudicators without statutory removal restrictions were removable at will). Adjudicators—regardless of their tenure protections—are expected to issue "unbiased, independent judgments," *id.* at 393-94,

27

while engaged in "dispassionate decisionmaking," *id.* at 400-01. There can be little doubt that Congress would have preferred such a regime to one in which administrative adjudication is completely unavailable. And, of course, severing the unconstitutional provision would "not foreclose Congress from pursuing alternative responses to the problem." *Seila Law*, 591 U.S. at 237.

Rather than permanently enjoining the United States from adjudicating any of the 11,000 alleged violations of Walmart's statutory responsibilities, the district court should have severed the constitutionally infirm portions of 5 U.S.C. § 7521. This would have permitted the remainder of the statutory scheme, which "remain[s] fully operative without the offending tenure restriction," to continue as Congress contemplated. *Seila Law*, 591 U.S. at 235.

## CONCLUSION

For the foregoing reasons, the judgment of the district court should be reversed.

Respectfully submitted,

BRIAN M. BOYNTON
  *Principal Deputy Assistant Attorney*
  *General*

JILL E. STEINBERG
  *United States Attorney*

  */s/ Joshua M. Salzman*
JOSHUA M. SALZMAN
DANIEL AGUILAR
  *Attorneys, Appellate Staff*
  *Civil Division*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 532-4747*
  *Joshua.M.Salzman@usdoj.gov*

July 2024

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 6,805 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Garamond 14-point font, a proportionally spaced typeface.

/s/ Joshua M. Salzman
Joshua M. Salzman

**CERTIFICATE OF SERVICE**

I hereby certify that on July 24, 2024, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Eleventh Circuit by using the appellate CM/ECF system, and that all participants in this case are represented by counsel registered with the CM/ECF system, which will effectuate service of this brief.

/s/ Joshua M. Salzman
Joshua M. Salzman

**STATUTORY ADDENDUM**

**5 U.S.C. § 7521.  Actions against administrative law judges**

(a) An action may be taken against an administrative law judge appointed under section 3105 of this title by the agency in which the administrative law judge is employed only for good cause established and determined by the Merit Systems Protection Board on the record after opportunity for hearing before the Board.

(b) The actions covered by this section are--

> (1) a removal;
>
> (2) a suspension;
>
> (3) a reduction in grade;
>
> (4) a reduction in pay; and
>
> (5) a furlough of 30 days or less;

but do not include--

> (A) a suspension or removal under section 7532 of this title;
>
> (B) a reduction-in-force action under section 3502 of this title; or
>
> (C) any action initiated under section 1215 of this title..